OPINION OF THE COURT
Timothy J. Drury, J.
The defendants have moved to suppress a video cassette and city license certificate allegedly confiscated on their premises on the grounds the search warrant involved was invalid in that it was based on illegally obtained information. The defendants also challenge the search warrant *623 contending that there was no prior judicial review of the video cassette before its seizure, that the search warrant was overbroad on its face, and that the defendant Bunford was not given adequate notice as the police entered to execute the search warrant as required by law. The defendants also argue that the charges against both of them should be dismissed because the informations are defective as a matter of law. These issues gave rise to a hearing, and testimony and argument was heard on September 22, 26, 30 and October 7, 1980. The court has heard the testimony, and also heard the argument of Herbert L. Greenman, Esq., of counsel to the defendants, and the argument of Timothy R Harvey, Esq., Assistant District Attorney, of counsel to Edward C. Cosgrove, District Attorney of the County of Erie, and the court has read the moving papers and the memorandum of Mr. Greenman, and has read the memoranda of Mr. Harvey and now, based on these and upon all the related papers and upon all prior proceedings, and with due deliberations having been had thereon, the court makes the following findings of fact and conclusions of law.
For two and a half years prior to May 15, 1980, Officer John Dugan, the one-man salicious literature squad of the Buffalo Police Department, had visited the Genesee Theater located at 1600 Genesee Street, Buffalo, and run by Kenneth Bunford once or even three times a week in the course of his duties. Sometime in February of this year Bunford converted the Genesee Theater to “The New 1600 Genesee Street Club, Inc.”, and began putting out applications in the theatre for his patrons, and started telling Dugan he was no longer welcome in the theatre. The applications said that law enforcement officers or Judges were excluded from membership. Signs went up near the ticket window saying members only, and a buzzer system was installed in the front door. Pictures were no longer shown on film but projected by video tape on a large seven-foot screen and on two smaller televisions in the theatre.
Between the changeover and May 15, Dugan entered undeterred except for one or possibly two run-ins with Bunford when he was told in no uncertain terms to leave and to stay out. The help however buzzed Dugan in just *624 the same. He never paid to come in. But Dugan noticed a change. When he walked into the theatre now the screen would be blank or there would be one or another of two B-grade movies playing, much to the consternation of the audience. The customers said the movie had gone off or were told it was “because the cop was here”. Dugan would stay and the customers would leave. The projectionist said he had orders to change the movie when Dugan appeared. Dugan became suspicious.
He enlisted the activity of his partner Officer Peacock, a man unknown to Bunford. Dugan briefed Peacock on his suspicions, gave him enough money to pay for a ticket into the show, and supplied him with a membership card that he had gained on 1 of his 15 or so visits to “The New 1600 Genesee Street Club, Inc.” to show in case it was needed. On May 15 Peacock was buzzed in, was never asked to show any membership card, duly noticed the members only signs, and went in and watched the movie in question without benefit of any stoppage. He returned to his police station and made out an affidavit describing the picture he saw, which became the basis for the search warrant for the film and the charges against Bunford and The New 1600 Genesee Street Club, Inc. The reason an affidavit was necessary was that Judge John A. Ramunno, the City Judge on duty that month, refused to use a membership card and a false name to go in and view the movie. He said it was unseemly.
The search warrant was duly signed by Judge Ramunno with Officer Dugan as the affiant based on the affidavit of Officer Peacock who was not present at the time in Judge Ramunno’s chambers. Dugan then promptly executed the search warrant. He met Bunford at the theatre and told him what he had come for. They then both went to the projection room, where Dugan recovered the film in question, “The Analist”.
Bunford claims that this was a genuinely private club and that Dugan had trespassed to gain his information and that Peacock’s observations were tainted as a result of his own trespass and the trespasses of Dugan who sent him in. Dugan on the other hand said he acted in good faith and properly so because the show was in fact opened *625 to the public at large, was still licensed as a public theatre, and that the city lawyers said he had a right to watch the film in the performance of his duties.
This court finds that there was nothing to distinguish a “member” from anyone else that came in off the street, except that a member must not be a police officer, his agent or a Judge. The corporation, except for some pious future plans, was Bunford in effect, and his job was simply to show movies. In a word, the club was a sham, and Dugan was particularly unpopular because he stood to expose whatever it was that made the projectionist change the film whenever Dugan appeared. Is the owner or his corporation immune from prosecution because the owner has ordered a particularly bullheaded police officer from the premises and he persisted in coming back, or sending his friends? I think not. The New 1600 Genesee Street Club, Inc., both before and after the changeover was a public place and Dugan had as much right to be there as anyone else. Bunford took exception to him because he was hurting his profits and threatening to expose his operation and not because of his personality. The fact that Dugan did not pay is not relevant here because this was really not the reason Bunford wanted him to stay out. The only harassment that Bunford suffered was due to his own fear of police and nothing more.
But lest there be any doubt, if it was not for Dugan’s entries there would have been no visit by Officer Peacock. It was the information that Dugan gained from his earlier visits that led him to ask Peacock to see the show. However, even if Dugan’s visits could be said to be illegal, this court finds that Peacock’s observations were far too removed and attenuated to be tainted by Dugan’s actions. Peacock was admitted to the theatre without any sort of subterfuge. The ticket taker even apologized for not seeing him promptly and buzzing him in immediately. Peacock never had to use the membership card that Dugan provided him with. He offered his money and it was accepted. He went in like any other member of the public and this is a further indication of the essentially public nature of these premises.
*626 This court cannot reasonably attribute the various warnings and directions Bunford gave to Dugan, and the different prohibitions on the membership application, and the exclusions contained on the signs on the walls in the lobby, to Peacock when he entered after paying his $4. Dugan’s different visits to the premises certainly lead to discoveries that resulted in Peacock’s entry, but they did not taint it. (See People v Dentine, 21 NY2d 700, cert den 393 US 967.)
Additionally, this court notes that Dugan acted in good faith on the advice of the City Attorney in what he did, as did Peacock who acted on the advice in turn of Dugan. Furthermore, Peacock’s intrusion, if there was one, was minimal and reasonable under all the circumstances, and indeed he was welcome and would have been welcome were he anybody else but a police officer (see People v Martinez, 37 NY2d 662).
The defendant further contends the seizure of the film was invalid because it was not first viewed by a Judge to determine whether or not it was obscene. Of course this court notes that, if a Judge did enter the premises under the circumstances as the court has found it, the defendant might still allege that there was an illegal entry because it would have been violative of the rules of the club. However, the court finds that the procedure followed by Judge Ramunno, which was to review the affidavit of Officer Peacock to determine the issue of obscenity, was proper in these circumstances. It is not Judge Ramunno’s distaste for a role he would have had to play which alone necessitated the use of this affidavit. The realities of the day tell us that the City Judges are known to the projectionists in theatres of this sort. And when the projectionists recognize a City Judge they simply switch to the familiar B-grade movie. Disguises and dissembling are unseemly and stupid. The higher courts cannot intend that a Judge must resort to every sort of artifice and dodge to sneak into a theatre before some determination can be made.
The court is fully aware of the controlling case in New York which is People v Potwora (48 NY2d 91). Potwora mandates that the issuing Magistrate conduct a *627 full and searching inquiry into the issue of obscenity and states that this duty cannot be delegated to a police officer. Since he was effectively prevented from viewing the movie himself, Judge Ramunno acted reasonably and reviewed the affidavit of Officer Peacock, and on the basis of this affidavit he determined that the movie was obscene. Unlike the facts in Potwora the affidavit in this case does not contain conclusions by others that something was obscene, but rather sets forth a detailed description of the movie. Perhaps it would have been better in this case to have Officer Peacock present when Judge Ramunno viewed the affidavit so that Peacock might have been available to be questioned by Judge Ramunno. Perhaps it would have been preferable if Officer Peacock included the words “and that is all there was” after each of the scenes that he describes in his affidavit as seems to be suggested by the defendants. It is difficult, however, to imagine what else a Magistrate would want to know from an officer like Peacock without delegating his powers of decision in asking the officer what he thought about the movie. And after reading the affidavit it is also difficult to imagine how this movie could be tastefully done, or could fail to appeal to anyone’s prurient interest, or how it would make some serious literary, artistic, political, or scientific statement. It is very difficult to conjure up some sort of silver lining for this film. Under these circumstances this court finds nothing about the use of an affidavit that would preclude a Judge from conducting the requisite inquiry before issuing a search warrant. The court further finds that Judge Ramunno made the full and searching inquiry mandated by People v Potwora (supra) and found the movie, to be obscene using proper constitutional safeguards.
The defendants also contend that the search warrant is overly broad because there are other premises over and on either side of the theatre that could be included under the address of 1600 Genesee Street (see People v Rainey, 14 NY2d 35). However, after examining all the testimony, particularly that of the defendant, the court finds that there is no way that any other portion of the premises could be confused with the theatre, which is the object of *628 the search warrant. The warrant is both directed to 1600 Genesee Street and the Genesee Theater. Under the terms of the warrant, especially the affidavit portion of the warrant, the two are synonymous.
However, the defendants also contend that any reference in the warrant to Bunford is unsworn, and without basis, and thus the entire warrant fails because it is overbroad on yet another count. This court notes the only reason given to search Bunford’s person occurs in the warrant portion of the search warrant where Detective Dugan has initialled some notes that appear next to Bun-ford’s name. But this reference to Bunford in the warrant portion must be read together with the affidavit, especially since it occurred on the same page as the Judge’s signature and above the Judge’s signature at that. Thus since the warrant should be read as a whole, it is not necessarily void because the reference to Bunford does not occur in the application (see People v De Lago, 16 NY2d 289; People v Taggart, 51 AD2d 863). However, the court is still faced with the question of whether this reference to Bunford is sufficient grounds to warrant a search of his person. The People contend that it does, because, read most broadly, the affidavit states that Bunford occupies the premises, that he owns the theatre and property in which the film is being shown, and that the cassette can be easily hidden on one’s person. This court observes that there is nothing in the search warrant about any alleged involvement with the management of the theatre or connection with the day-to-day operation of the theatre or with the screening of the film. For these reasons the court finds that the search warrant fails to state sufficient grounds to justify the search of the person of Mr. Bunford. The court will not however strike the entire search warrant as overly broad. That portion that affects the person of Mr. Bunford is clearly severable from that portion directed to the Genesee Theater (see People v Hansen, 38 NY2d 17). Therefore the warrant as it relates to “The New 1600 Genesee Street Club, Inc.” is not affected and that portion of the search warrant is valid.
This court also rejects the defendant’s contention that there was insufficient notice given to Mr. Bunford by *629 Officer Dugan of Dugan’s authority and the purpose for his visit. The issue is one of credibility; in other words, who to believe, Dugan or Bunford. The court finds that the credible evidence shows that Dugan acted reasonably under the circumstances and gave adequate notice pursuant to the statute (CPL 690.50, subd 3).
Finally, this court finds that the informations are sufficient to sustain the charges alleged and that further specificity has properly been left to the bill of particulars.
Therefore, the defense motions are denied as aforestated, the video cassette and city license certificate are admissible at trial, and the informations are sufficient to support the crimes as alleged.